IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>      v.<br><br>KEADRON DEON WALKER,<br><br>                              Defendant. | Case No. 3:25-cr-00014-TMB-KFR<br><br>ORDER ON KEADRON DEON WALKER'S MOTION TO SUPPRESS [DKT. 55] |

## I.    INTRODUCTION

The matter comes before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R")[1] recommending the Court deny Defendant Keadron Deon Walker's Motion to Suppress at Docket 55 (the "Motion").[2] Keadron Deon Walker (hereinafter "Keadron Deon" at the Defendant's request) objects to the R&R.[3] Pursuant to statute, the Court has conducted a *de novo* review of the record.[4] Based on that review, and in consideration of the applicable law, the Court **ACCEPTS and ADOPTS** the R&R at Docket 92 in its entirety for the reasons discussed below. Accordingly, the Motion at Docket 55 is **DENIED**.

---

[1] Dkt. 92 (Report & Recommendation).
[2] Dkt. 55 (Objection to Unconstitutional Search Warrant, & Unconstitutional Search & Seizure; & Move to Suppress Evidence Under Rule 12 of the Federal Rules of Criminal Procedure).
[3] Dkt. 102 (Objection to the Report and Recommendation).
[4] 28 U.S.C. § 636(b)(1)(C) ("Within fourteen days after being served with a copy [of the magistrate judge's proposed findings and recommendations], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").

1

## II. BACKGROUND

This Court adopts and incorporates the Magistrate Judge's statement of facts set forth in the "Background" portion of the Final R&R and as summarized below.[5] On February 10, 2025, Special Agent ("SA") Hatch of the Drug Enforcement Administration ("DEA") applied for a search warrant to search Keadron Deon's bedroom at his residence in Anchorage, Alaska.[6] Three days later, a group of DEA and Federal Bureau of Investigations ("FBI") agents executed a search warrant at Deon's residence.[7] Keadron Deon was taken into custody and a search of his bedroom revealed, among other items, a firearm.[8] Keadron Deon is charged by indictment with Felon in Possession of a Firearm and Distribution of a Controlled Substance within 1000 Feet of a Playground.[9]

The Motion seeks suppression of the evidence of a firearm obtained from the search of Keadron Deon's residence, arguing that (1) the search warrant for his residence was invalid; (2) the manner in which the DEA and FBI agents executed the search warrant was unreasonable; and (3) agents violated certain provisions of the Federal Rules of Criminal Procedure during and after the execution of the search warrant.[10]

A. *Procedural History*

An evidentiary hearing was held before the Magistrate Judge on June 23, 2025.[11] The Magistrate Judge heard testimony from DEA SA Austin Hatch, FBI Agent James Brooks, FBI

---

[5] *See* Dkt. 92 at 1–8.
[6] *Id.* at 1.
[7] *Id.* at 6.
[8] *Id.* at 7.
[9] Dkt. 26 at 1 (First Superseding Indictment).
[10] *See generally* Dkt. 55.
[11] Dkt. 80 (Minute Entry for Evidentiary Hearing).

Agent Douglas Jones, and FBI Agent Wendy Terry.[12] The Magistrate Judge recommends that the Court deny the Motion.[13] The R&R addresses each of Keadron Deon's arguments in turn.

1. The R&R Finds that the Search Warrant was Valid.

First, the Magistrate Judge concludes that the search warrant for Keadron Deon's bedroom was valid.[14] The Magistrate Judge finds that Keadron Deon "fail[ed] to identify any specific statements in SA Hatch's affidavit that he believes were false" and "fail[ed] to identify any specific facts that contradict SA Hatch's description of the investigative events."[15] Thus, the Magistrate Judge does not strike any information in the affidavit in his review of the warrant. The Magistrate Judge then reviews the issuing Magistrate Judge's probable cause determination for ordering the warrant.[16] The Magistrate Judge concludes that the affidavit provided sufficient basis to believe that Keadron Deon was selling controlled substances and firearms from his bedroom, and that evidence of this conduct would be found in the bedroom.[17]

In analyzing the validity of the search warrant, the Magistrate Judge also addresses, *sua sponte*, what appears to be an error in SA Hatch's affidavit.[18] In the affidavit in support of the search warrant, SA Hatch stated that there were two controlled buys from Keadron Deon, one by Confidential Source 1 (CS-1) and the other by Confidential Source 2 (CS-2).[19] The affidavit states that the controlled buy involving CS-2 occurred on January 3, 2024,[20] but SA Hatch testified at

---

[12] Dkt. 86 (Transcript of Evidentiary Hearing) at 4, 39, 61, 108.
[13] Dkt. 92 at 1.
[14] *Id.* at 9.
[15] *Id.* at 10–11.
[16] *Id.* at 11.
[17] *Id.*
[18] *Id.* at 4, 12.
[19] Dkt. 59-1 (Warrant No. 3:25-cr-mj-00069-MMS) at 15, 18–19.
[20] *Id.* at 18.

the evidentiary hearing that the controlled buy involving CS-2 occurred on January 3, 2025.[21] The Magistrate Judge notes that while the "chronological format of the affidavit up until the paragraphs describing those events could have suggested to the issuing Magistrate Judge that the dates provided in the affidavit were scrivener's errors," the "four corners of the affidavit did not clearly establish those dates were erroneous," so the Magistrate Judge treats the events involving CS-2 as occurring in 2024 for the purpose of reviewing the probable cause determination.[22] The Magistrate Judge then concludes that, although Keadron Deon did not raise the issue, events from 2024 would not be considered stale with respect to a warrant for evidence of a drug trafficking offense under Ninth Circuit case law.[23]

   2. <u>The R&R Concludes that the Manner in Which Law Enforcement Executed the Search Warrant was Reasonable.</u>

Next, the Magistrate Judge finds that law enforcement officers' execution of the search warrant was reasonable.[24] While Keadron Deon asserts in the Motion that the use of a Special Weapons and Tactics ("SWAT") team was unreasonable,[25] the R&R finds that law enforcement had legitimate reasons to involve a SWAT team.[26] The Magistrate Judge finds that the use of a SWAT team was reasonable because the execution of the search warrant was deemed to pose a high risk to agent safety due to "the likely presence of firearms at the residence, Defendant's criminal history, the likely presence of multiple people inside and outside the residence, and the location of the residence in a high-crime area."[27] Additionally, the R&R concludes that the use of

---

[21] Dkt. 86 at 12–13.
[22] Dkt. 92 at 12 n. 94.
[23] *Id.* at 12.
[24] *Id.* at 13.
[25] Dkt. 55 at 9, 11.
[26] Dkt. 92 at 14.
[27] *Id.*

flash bangs and the damage to Keadron Deon's residence—a broken window and a breached door—did not make the execution of the search warrant unreasonable.[28] The R&R also addresses Keadron Deon's assertion that the search occurred at 5:00 A.M. by pointing to "overwhelming[]" evidence in the record that the search occurred at 6:03 A.M. in accordance with the warrant.[29] Finally, the R&R concludes that even if Keadron Deon had shown the execution of the search warrant was unreasonable, suppression would not be an appropriate remedy because even if agents had used alternative methods to execute the warrant, the disputed evidence would have inevitably been found.[30]

> 3. The R&R Concludes that Any Violation of Federal Rule of Criminal Procedure 41(f) Would Not Justify Suppression.

Finally, the Magistrate Judge determines that Keadron Deon's allegations that the agents violated provisions of Federal Rule of Criminal Procedure 41(f) do not merit suppression of the evidence discovered during the execution of the search warrant.[31] Keadron Deon alleged violations of Rule 41(f)(1)(B), (f)(1)(C), and (f)(1)(D).[32] As to Rule 41(f)(1)(B) and (f)(1)(C), the Magistrate Judge determines that Keadron Deon failed to present a basis upon which the Magistrate Judge could determine that the rules were violated.[33] Even if there had been a rule violation, the Magistrate Judge concludes that suppression would not be appropriate as the violations would not rise to a constitutional violation.[34] As to Rule 41(f)(1)(D), the Magistrate Judge determines that, while the return of the search warrant was over three months after its execution, the failure to

---

[28] *Id.* at 14–15.
[29] *Id.* at 13 n. 98.
[30] *Id.* at 15–16 (citing *United States v. Ankeny*, 502 F. 3d 829, 837–38 (9th Cir. 2007)).
[31] *Id.* at 16 (citing *United States v. Manaku*, 36 F.4th 1186, 1190 (9th Cir. 2022).
[32] Dkt. 55 at 7–8.
[33] Dkt. 92 at 17–18.
[34] *Id.*

promptly return the warrant was a failure to comply with the "ministerial requirements" of Rule 41(f)(1)(D) is a "technical error that will not lead to suppression absent prejudice or deliberate disregard for the rule."[35]

### III.   LEGAL STANDARD

The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1), which provides that a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and shall review objections *de novo*.[36] For topics on which no objections are filed, "[n]either the Constitution nor [28 U.S.C. § 636(b)(1)] requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct."[37] Further, the District Court has the discretion to hear evidence and arguments not initially brought before the Magistrate Judge.[38]

   A. *Suppression is Warranted Only Where the Benefits of Deterring Constitutional Violations Outweighs the Social Costs of Excluding Evidence.*

The Fourth Amendment protects the right of people to be secure in their property against unreasonable searches and seizures.[39] Generally, for a search of a residence to comply with the Fourth Amendment, the search must be supported by probable cause and a warrant authorizing the search.[40] Probable cause exits if there is a "fair probability that contraband or evidence of a crime

---

[35] *Id.* at 19 (citing *United States v. Motz*, 936 F.2d 1021, 1025 (9th Cir. 1991).
[36] 28 U.S.C. § 636(b)(1).
[37] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").
[38] *United States v. Howell*, 231 F.3d 615, 621–622 (9th Cir. 2000).
[39] U.S. Const. amend. IV.
[40] *United States v. Brooks*, 367 F.3d 1128, 1133 (9th Cir. 2004).

will be found in a particular place based on the totality of circumstances."[41] Probable cause is "a standard well short of absolute certainty."[42]

Under the exclusionary rule, evidence derived from a Fourth Amendment violation is deemed tainted and must be excluded from evidence subject to certain exceptions.[43] The exclusionary rule is only applicable where the benefits of deterring constitutional violations outweigh the "substantial social costs" of suppressing evidence of criminal activity.[44] "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."[45]

B. To Challenge the Validity of an Affidavit in Support of a Search Warrant, the Defendant Must Make a Substantial Initial Showing of Deliberate Falsehood or Reckless Disregard for the Truth.

An affidavit in support of a search warrant is presumptively valid.[46] However, a defendant may challenge an affidavit in support of a search warrant by making supported, non-conclusory allegations of "deliberate falsehood or of reckless disregard for the truth."[47] "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."[48] If the allegedly false statements are necessary to the finding of probable cause to support the warrant, the court may then hold an evidentiary hearing to examine the alleged

---

[41] *United States v. Kvashuk*, 29 F.4th 1077, 1085 (9th Cir. 2022) (quoting *United States v. King*, 985 F.3d 702, 707 (9th Cir. 2021)).
[42] *Los Angeles County v. Rettele*, 550 U.S. 609, 615 (2007).
[43] *United States v. Gorman*, 859 F.3d 706, 716 (9th Cir.), *order corrected*, 870 F.3d 963 (9th Cir. 2017).
[44] *Utah v. Strieff*, 579 U.S. 232, 237 (2016).
[45] *Herring v. United States*, 555 U.S. 135, 144 (2009).
[46] *Franks v. Delaware*, 438 U.S. 154, 171 (1978).
[47] *Id.*
[48] *Id.*

deliberate falsity or reckless disregard of the affiant.[49] After the hearing, any material in the affidavit that the defendant proves, by a preponderance of the evidence, to be deliberately or recklessly false will then be struck from the affidavit.[50] If the remaining information in the affidavit no longer supports a finding of probable cause to issue the warrant, the fruits of the warrant will typically be excluded.[51]

When reviewing a Magistrate Judge's decision to issue a warrant, the reviewing court is "limited to the information and circumstances contained within the four corners of the underlying affidavit."[52] A decision to issue a search warrant is reviewed for clear error.[53] The reviewing court must give the issuing judge's finding of probable cause "great deference."[54]

C. *Information in Support of a Search Warrant Application is Not Stale if there is Evidence of Ongoing Criminal Activity.*

The affidavit in support of the search warrant must provide sufficient evidence to justify a conclusion that "the property which is the object of the search is probably on the person or premises to be searched at the time the warrant is issued."[55] On its own, "proof that the property was in the possession of the person or upon the premises at some remote time in the past will not justify a present invasion of privacy."[56] The duration of the period between the events averred in the affidavit and seeking the search warrant is not the controlling issue of whether information supporting the warrant is stale; rather, the court must consider the "facts of the case and the nature

---

[49] *Id.* at 171–72.
[50] *Id.* at 172.
[51] *Id.* at 156.
[52] *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir.), *amended*, 769 F.2d 1410 (9th Cir. 1985).
[53] *United States v. Wright*, 215 F.3d 1020, 1025 (9th Cir. 2000).
[54] *United States v. Elmore*, 917 F.3d 1068, 1074 (9th Cir. 2019) (quoting *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011)).
[55] *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968).
[56] *Id.*

of the criminal activity and property sought."[57] Older information may support a finding that the items sought are likely to be found in the targeted location if the affiant provides support for this assertion in the affidavit.[58] With respect to drug trafficking offenses, "cases involving ongoing narcotics businesses, lapses of several months—and up to two years in certain circumstances—are not sufficient to render the information in an affidavit too stale to support probable cause."[59]

## IV.  ANALYSIS

Having reviewed the R&R, Keadron Deon's objections, and the record, the Court concludes that the objections do not merit revision or rejection of the R&R. The Court exercises its discretion to consider new arguments in this case because Keadron Deon's Motion was filed *pro se*, he subsequently elected to have appointed counsel who appeared on his behalf at the evidentiary hearing, and then, due to circumstances beyond his control, was reassigned substitute counsel who filed these objections on his behalf.[60]

---

[57] *United States v. Lacy*, 119 F.3d 742, 745–46 (9th Cir. 1997) (quoting *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir.1993)).

[58] *Id.* at 746 ("The affidavit in this case provided ample reason to believe the items sought were still in Lacy's apartment. Based on her training and experience as a Customs agent, the affiant explained that collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes.").

[59] *United States v. Fernandez*, 388 F.3d 1199, 1254 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005) (citing *Pitts,* 6 F.3d at 1369–70 (holding that four-month lapse between crack sale involving defendant in different location and affidavit was not enough to render information stale where affidavit supported inference that defendant was "more than a one-time drug seller"); *United States v. Greany,* 929 F.2d 523, 525 (9th Cir.1991) (evaluating staleness "in light of the particular facts of the case and the nature of the criminal activity and property sought" and holding that "[w]hen the evidence sought is of an ongoing criminal business," even a two-year lapse may not render information stale); *United States v. Dozier,* 844 F.2d 701, 707 (9th Cir.1988) ("The mere lapse of substantial amounts of time is not controlling in a question of staleness.")).

[60] Dkt. 36 (Minute Entry Regarding Defendant's Self-Representation); Dkt. 63 (Defendant's Oral Motion to Appoint Counsel); Dkt. 91 (Defense Counsel's Oral Motion to Withdraw); Dkt. 90 (Notice of Attorney Appearance); *see also Howell*, 231 F.3d at 621–622.

9

A. *Keadron Deon Objects to the R&R's Finding that the Search Warrant is Valid.*

Keadron Deon submitted two objections to the R&R.[61] First, he argues that SA Hatch's averments as to the controlled buy involving CS-1 are "unsupported by the video taken by the confidential informant," and that without this information the warrant is not supported by probable cause.[62] Second, he argues that the information in SA Hatch's affidavit is stale because the controlled buy with CS-2 could have occurred in 2024 rather than 2025.[63]

B. *The Magistrate Judge Did Not Err by Declining to Strike Statements from SA Hatch's Affidavit*

Keadron Deon objects to the R&R's conclusion that the issuance of the search warrant was supported by probable cause.[64] He submits that while he did not present evidence of a specific falsehood before the Magistrate Judge, he "now submits that the video of the controlled buy on June 27, 2024, does not depict him accepting any money from [CS-1] and does not depict him providing drugs of any type to [CS-1]."[65]

Upon *de novo* review, the Court finds that the video shows Keadron Deon measuring a white powder, handing it to CS-1 and asking him if he wants to "weigh it out himself." Keadron Deon is then recorded saying "seven" in response to CS-1's question of "how much?"[66] Further, Keadron Deon implies that the agents acted improperly by following CS-1 away from Keadron Deon's residence "rather than immediately frisking the informant."[67] However, the affidavit states that CS-1 was searched before and after entering Keadron Deon's residence, and was "under

---

[61] Dkt. 102 (Defendant's Objections to Findings and Recommendations).
[62] *Id.* at 2.
[63] *Id.* at 3.
[64] Dkt. 102 at 2–3.
[65] *Id.* at 2.
[66] Dkt. 112 (Notice of Conventional Filing) (Exhibit 2).
[67] Dkt. 102 at 3.

continued surveillance" until debriefing with officers.[68] The affidavit also states that the substances CS-1 received from Keadron Deon were subsequently tested at a narcotics lab and found to be 6.053 grams (+/- .002 g) of methamphetamine hydrocholoride and 5.975 grams (+/- .002 g) of fentanyl.[69]

Based on this review, the Court rejects Keadron Deon's argument that the video does not support SA Hatch's assertion in the affidavit. The Court finds that the video corroborates SA Hatch's affidavit and that Keadron Deon has failed to show any "deliberate falsehood or . . . reckless disregard for the truth."[70] Thus, the Court declines to strike any information from the affidavit in support of the search warrant.

C. *The Magistrate Judge Did Not Err by Concluding that the Information in the Affidavit was Not Stale*

Keadron Deon also objects to the Magistrate Judge's treatment of the controlled buy involving CS-2.[71] He asserts that the Magistrate Judge "construed this event as having occurred in January 2025 even though the affidavit states 'January 1, 2024' and 'January 3, 2024.'"[72] The Court reads the R&R differently than Keadron Deon. While the Magistrate Judge notes that, due to SA Hatch's testimony and the chronological context of the affidavit, the use of "2024" in Paragraphs 23 and 24 of SA Hatch's affidavit is likely a scrivener's error. However, the Magistrate Judge explicitly states that "because the four corners of the affidavit did not clearly establish that those [2024] dates were erroneous, the Court relies on those incorrect dates for the purpose of reviewing the [M]agistrate [J]udge's probable cause determination."[73] The Court understands the

---

[68] Dkt. 59-1 at 15–16.
[69] *Id.* at 16.
[70] *See Franks*, 438 U.S. at 171.
[71] Dkt. 102 at 3.
[72] *Id.*
[73] Dkt. 92 at 12 n. 94.

11

Magistrate Judge to mean that while the evidence suggests Paragraphs 23 and 24 of the affidavit contain a scrivener's error as to the date of the events described therein, the issuing Magistrate Judge construed the events as occurring in January 2024 for the purposes of reviewing the probable cause determination. The Court agrees with this analysis and will also assume, for the purposes of this Order, that the controlled buy involving CS-2, as described in Paragraphs 23 and 24 of the affidavit, occurred in January 2024.

Even with this assumption, the information contained in the affidavit is not stale. The controlled buy involving CS-1 occurred on June 27, 2024.[74] The warrant was issued approximately 8 months later.[75] In the affidavit, SA Hatch states that, based on his experience, "the distribution of controlled substances is frequently a continuing activity over months and years. Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legal commodity would purchase stock for sale."[76] The Ninth Circuit has repeatedly recognized that "lapses of several months" do not render information in an affidavit stale in the context of an ongoing drug trafficking offense.[77] Thus, the 2024 conduct, combined with SA Hatch's statement as to his experience investigating the distribution of controlled substances and the rest of the affidavit, provides a substantial basis on which the issuing Magistrate Judge could determine that there was a "fair probability that contraband or evidence of a crime will be found" at Keadron Deon's residence.[78]

---

[74] Dkt. 59-1 at 15.
[75] Dkt. 55-1 (Warrant No. 3:25-cr-mj-00069-MMS).
[76] Dkt. 59-1 at 19–20.
[77] *See Fernandez*, 388 F.3d at 1254; *Pitts,* 6 F.3d at 1369–70; *Greany,* 929 F.2d at 525; *Dozier,* 844 F.2d at 707.
[78] *See Kvashuk*, 29 F.4th at 1085.

## V. CONCLUSION

The Court concludes that Keadron Deon's outstanding objections do not merit revision or rejection of the R&R. Accordingly, the Court **ACCEPTS AND ADOPTS** the R&R at Docket 92 in its entirety and **DENIES** the Motion at Docket 55.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 9th day of September, 2025.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE